UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

| Case No. | 2:15-cr-00477-CAS | | Date | December 3, 2015 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Not Present | | |
|---|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Ivan Greenhut | NOT | | X | Erin Darling, DFPD | NOT | X | |
| | | | | Koren Bell, DFPD | NOT | X | |

| | |
|---|---|
| **Proceedings:** | (IN CHAMBERS) - DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Dkt. 32, filed October 26, 2015)<br><br>DEFENDANT'S MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT (Dkt. 31, filed October 26, 2015) |

## I.    INTRODUCTION & BACKGROUND

On September 1, 2015, defendant Ivan Greenhut was charged in a three-count indictment with Payment of a Gratuity to a Public Official, in violation of 18 U.S.C. § 201(c)(1)(A); Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371; and Witness Tampering, in violation of 18 U.S.C. § 1512(b)(3). Dkt. 1 ("Indictment"). Beginning in or about 2008 and continuing through about September 2012, defendant owned, with his then-wife Carol Greenhut, Modern Data Products ("MDP") and Modern Imaging Solutions ("MIS") (collectively, the "subject companies"), which sold office supplies, furniture, electronic equipment, and other materials to customers. Id. ¶¶ 1-4. The gravamen of the indictment is that from 2008 to 2012, defendant Ivan Greenhut, his then-wife Carol Greenhut, and others at MDP and MIS, illegally paid gratuities—in the form of cash, gift cards, Apple iPods, Apple iPads, computers, video game consoles, DVD players, cellular phones, and plasma televisions—to federal agency officials based upon the amount of supplies they purchased from MIS. More specifically, the indictment alleges that during the relevant period, MIS and MDP paid a total of approximately $42,590 in gifts to federal agency officials and that these officials purchased approximately $3,000,000 worth of supplies from MIS. Id. ¶ 5(l).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

According to the indictment, MDP was a California corporation with its principal place of business in Canoga Park, California, while MIS was a Delaware corporation with its principal place of business in Manila, Phillippines.  Id. ¶¶ 1-2.  Defendant Ivan Greenhut lived and worked in Manila and owned 49% of the subject companies, while non-defendant Carol Greenhut lived and worked in Canoga Park and owned 51% of the subject companies.  Id. ¶ 3.  Although defendant Ivan Greenhut exclusively controlled and managed Manila-based MIS, he also exercised control over California-based MDP.  Id.  Non-defendant Carol Greenhut served as the office manager and bookkeeper of MDP, but also did some bookkeeping for MIS.  Id.

The indictment alleges that California-based MDP had a contract with the United States General Services Administration ("GSA"), which delineated pre-negotiated pricing terms and conditions and thereby permitted federal agencies to purchase items from MDP in a streamlined manner.  Id. ¶ 5(a).  Manila-based MIS did not have a GSA contract because, according to the indictment, GSA permitted only one contract per owner.  Id. ¶ 5(i),(j).  The indictment alleges that MIS billed federal agencies for items purchased from MIS through MDP's GSA contract.  Id.

Trial in this matter is currently set for December 15, 2015, and defendant Ivan Greenhut has filed several pretrial motions, including a motion to suppress evidence and a motion to strike surplusage from the indictment.  The Court addresses each of these motions below.

## II.     MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO A FEDERAL SEARCH WARRANT

### A.     Introduction

On October 26, 2015, defendant filed a motion to suppress evidence obtained during the execution of a federal search warrant. Dkt. 32.  The government filed an opposition to defendant's motion on November 12, 2015, dkt. 54, and defendant replied on November 16, 2015, dkt. 58.  Through his motion, defendant seeks to suppress evidence of Yahoo! instant messages obtained in a 2012 search, conducted pursuant to a federal search warrant, of MDP's Canoga Park, California office.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

### B.     Background

On September 11, 2012, after an investigation, federal agents obtained a search warrant for the office of Modern Data Products, located at 22122 Sherman Way, Suite 209, Canoga

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Park, CA 91303.  <u>See</u> Motion to Suppress, Ex. A ("Search Warrant").  The warrant was supported by an attached affidavit from Special Agent ("SA") James G. McWhirter ("McWhirter Affidavit"), whose statement of probable cause described interviews with two former sales representatives for the "subject companies."  <u>See</u> McWhirter Affidavit, ¶¶ 12-13 (Bates 1349-50).  According to the McWhirter Affidavit, a former sales representative for the subject companies told SA McWhirter the following:

> [D]uring her employment with the SUBJECT COMPANIES between June 2009 and August 2010, she had conversations with sales representatives of the SUBJECT COMPANIES who told her they provided incentive "gifts," such as candy, Starbucks gift cards, phones, televisions, computers, and cameras to U.S. Government procurement officials in exchange for their continued business.  [She] stated that she concurrently observed those sales representatives ordering gifts for procurement officials . . . She identified *Ivan and Carol Greenhut* as the owners of the SUBJECT COMPANIES.

<u>Id.</u> at ¶ 12 (Bates 1349-50) (emphasis added).  Other sales representatives made similar allegations about the subject companies' practice of gift giving to U.S. government procurement officials.  <u>See id.</u> at ¶ 13 (Bates 1350).  As defendant notes in his motion, the above reference to Ivan Greenhut as one of the "owners of the subject companies" is the only mention of the defendant in the McWhirter Affidavit.

With respect to establishing probable cause for the search warrant, SA McWhirter also described interviews with, and records pertaining to, U.S. government officials who received gifts from the subject companies.  <u>See id.</u> ¶¶ 20-30 (Bates 1356-61).  In addition, the McWhirter Affidavit recounts that other U.S. government officials described a scheme run by the subject companies' Filipino sales representatives whereby the employees would arrange for electronics to be shipped to the customers from vendors in the U.S., not as gifts for the customers to keep, but rather as "sales commissions" that the customers were to then send to the sales representatives in the Phillipines.  <u>Id.</u> ¶ 24 (Bates 1358) ("He explained that the four electronic devices he received from the SUBJECT COMPANIES were not for him, but were for the Philippine sales representative, who informed him that they were her sales commissions."); ¶ 27 (Bates 1360–61) ("[He] explained that the camcorder he received from the SUBJECT COMPANIES was not for him, but for the Philippine sales representative, who informed him that she had the item shipped to him because it was cheaper to purchase and ship it to the United States than directly to her in the Philippines . . . [he] added that it was never picked up and the sales representative requested that he ship it to the Philippines, which [he]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

declined to do due to the cost of shipping."). As defendant notes, it appears from the face of the McWhirter Affidavit alone that neither the records reviewed, nor the U.S. government employees interviewed, ever expressly mentioned or otherwise implicated defendant Ivan Greenhut in allegations regarding payment of gratuities to government officials.

Upon review and consideration of the McWhirter Affidavit, then-Magistrate Judge Fernando M. Olguin authorized the seizure of fourteen categories of documents from the time period spanning May 5, 2008 through May 15, 2012. See Search Warrant, Attachment B, ¶¶ 1-14 (Bates 1318-1321). As is relevant to defendant's motion to suppress, number 6 on this list of 14 categories reads as follows:

> All correspondence records related to the SUBJECT COMPANIES' offering of incentives, gifts or gratuities to any U.S. Government representative or employee, specifically; memoranda, letters, transmittals, electronic mailings, and *instant messages*.

Id. at ¶ 14 (Bates 1319) (emphasis added).

On or about September 13, 2012, the search warrant was executed by a team of law enforcement personnel. Dkt. 54, Declaration of SA Phillip Howard ("Howard Decl.") ¶ 4. Defendant Ivan Greenhut was not present during the search, while defendant's then-wife, Carol Greenhut, was present. Dkt. 54, Declaration of Carol Greenhut ("Carol Greenhut Decl.") ¶ 6; Howard Decl. ¶ 6. Among other items seized during the search, law enforcement personnel made forensic images of eleven electronic devices, including computers. Dkt. 54, Declaration of SA Ryan Settle ("Settle Decl.") ¶ 13; Howard Decl., Ex. A. According to declarations submitted in conjunction with the government's opposition to the instant motion, when Special Agents Ryan Settle ("SA Settle") and Craig Wyckoff ("SA Wyckoff") made forensic copies of the devices, they documented on Computer Evidence Collection Worksheets (1) the place where the computer was found, (2) their guess as to the probable user of the computer, and (3) a name for the forensic copy. Settle Decl. ¶ 9, Ex. G.

Shortly after executing the on-site search of MDP's offices, federal agents conducted a forensic search of the seized electronic devices, including the "Greenhut Desktop" and "Greenhut Laptop." See Howard Decl. Ex. A (Lead Response-Media Analysis Report) at Bates 2738-39. Specifically, the reviewing agents conducted a "manual file system review," followed by "an exhaustive keyword search of the images acquired pursuant to the search warrant executed at MDP." Id. at Bates 2738. The keyword search included a list of 30 search

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

terms, including, for example, "gift [and] ivangreenhut" and "ipad [and] ivangreenhut." Id. at Bates 2740.

Pursuant to the "keyword search review," agents seized, among other things, a cache of Yahoo! instant messages that span multiple years and include conversations between defendant Ivan Greenhut and Carol Greenhut, who at the time was the manager of California-based MDP. See Motion to Suppress, Ex. D (Yahoo! Instant Messenger Conversations), at Bates 784-868. According to the government, there were 602,522 internet/chat files on the eleven digital devices that were seized.  Howard Decl. ¶ 16, Ex. E.  SA Howard avers that he did not review all of the Yahoo! instant messages on the devices, but rather reviewed only a subset of messages (the "Yahoo! instant message subset") that returned from the keyword search review he ran against the large cache of such data.  See Howard Decl. ¶¶ 15,16.  The Yahoo! instant message subset was later produced to the defense and is now the subject of the instant motion to suppress.

### C.    Discussion

In his motion, defendant offers three arguments for why the evidence contained in the Yahoo! instant message subset must be suppressed: First, the warrant fails to establish probable cause for the search and seizure of defendant's instant messages, thereby warranting suppression; second, the warrant lacks particularity as to defendant's instant messages and is impermissibly overbroad, thereby warranting suppression; and third, the agents exceeded the permissible scope of the warrant by allegedly seizing defendant's instant messages "wholesale," thereby warranting suppression.  The Court in turn addresses each of these potential grounds for suppression of the Yahoo! instant messages.[1]

---

[1]    In its opposition to defendant's motion to suppress, the government first argues that defendant has failed to establish that he has standing to challenge the search of the MDP office or the off-site searches of the electronic devices found on those premises.  Opp'n at 12. "Fourth Amendment standing, unlike Article III standing, 'is a matter of substantive [F]ourth [A]mendment law; to say that a party lacks [F]ourth [A]mendment standing is to say that *his* reasonable expectation of privacy has not been infringed.'"  United States v. SDI Future Health, Inc., 568 F.3d 684, 695 (9th Cir. 2009) (quoting United States v. Taketa, 923 F.2d 665, 669 (9th Cir. 1991)).  In order to challenge the government's search on Fourth Amendment grounds, defendant "bears the burden of demonstrating that he "had a legitimate expectation of privacy *in the place searched*."  United States v. Lingenfelter, 997 F.2d 632, 636 (9th Cir. 1993) (emphasis added).  Accordingly, the government notes, *inter alia*, that "defendant has not established his use, let alone exclusive use, of the digital devices at issue," as defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

**1.     Whether the Search Warrant Was Supported by Probable Cause to Search Yahoo! Instant Messages on the Seized Electronic Devices**

"A search warrant is supported by probable cause if the issuing judge finds that, 'given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " United States v. Underwood, 725 F.3d 1076, 1081 (9th Cir. 2013) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense, practical question.' " United States v. Kelley, 482 F.3d 1047, 1050 (9th Cir. 2007) (quoting United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)). "Neither certainty nor a preponderance of the evidence is required." Id.

---

"could not do so [because] he did not work on the premises of MDP." Opp'n at 12 (citing Carol Greenhut Decl. ¶¶ 5,8). In his reply, defendant argues that he has standing to challenge the search of MDP's offices because he co-owned and operated MDP, accordingly "enjoyed a proprietary and possessory interest in its offices in Canoga Park, California, and therefore possessed a reasonable expectation of privacy at his business." Reply at 3. In addition, defendant contends that he also maintains standing, on separate and independent grounds, to challenge the search and seizure of the "one-on-one communications with his then-wife via [Yahoo! Instant Messenger]." Id.

In light of the Court's conclusion, discussed *infra*, on the merit's of defendant's motion to suppress evidence obtained in connection with the search, the Court "need not decide whether [defendant] has standing to challenge the admissibility of that evidence" through the instant motion. United States v. Huggins, 299 F.3d 1039, 1050 n.15 (9th Cir. 2002) (noting that "[s]tanding to challenge a search or seizure is a matter of substantive Fourth Amendment law rather than of Article III jurisdiction, Rakas v. Illinois, 439 U.S. 128, 139–40 (1978), meaning that the government can waive the standing defense by not asserting it, United States v. Taketa, 923 F.2d 665, 670 (9th Cir. 1991), [but] that [the Court] *may assume standing when denying an unreasonable-search claim on the merits*.") (emphasis added); see also United States v. Peterson, 812 F.2d 486, 490 (9th Cir. 1987) (Kennedy, J.) ("Our conclusion that [one appellant] had standing requires us to reach the substance of appellants' various [Fourth Amendment] claims. In light of our ultimate resolution of these claims, we need not decide whether any of the other appellants had standing.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

"A magistrate judge's finding of probable cause is entitled to great deference." United States v. Clark, 31 F.3d 831, 834 (9th Cir. 1994); United States v. Wong, 334 F.3d 831, 835-36 (9th Cir. 2003) ("We review a magistrate judge's finding of probable cause to issue a search warrant for clear error."). Still, "[a] reviewing court should find that probable cause is not met when the issuing judge lacked a 'substantial basis for . . . conclud[ing] that probable cause existed.' " Underwood, 725 F.3d at 1081 (brackets in original; internal quotation marks omitted) (quoting Gates, 462 U.S. at 238-39). "Conclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause." Id. The supporting affidavit or declaration "must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of the probable cause determination." Id. "Under the totality of the circumstances test," however, "otherwise innocent behavior may be indicative of criminality when viewed in context." United States v. Chavez-Miranda, 306 F.3d 973, 978 (9th Cir. 2002). "Additionally, issuing judges may rely on the training and experience of affiant police officers." Id.

Only one of the fourteen categories of documents authorized in the warrant is of particular relevance to defendant's motion to suppress. The relevant category ("Category Six") reads as follows:

> All correspondence records related to the SUBJECT COMPANIES'
> offering of incentives, gifts or gratuities to any U.S. Government
> representative or employee, specifically; memoranda, letters,
> transmittals, electronic mailings, and ***instant messages***.

Exh. A at Bates 1371 (emphasis added). Defendant argues that although "the [McWhirter] [A]ffidavit established probable cause for 13 of the 14 categories of records seized, it did not establish probable cause for the 'instant messages'"mentioned in Category Six. Motion to Suppress at 9. More specifically, defendant argues that the McWhirter Affidavit fails to articulate a "reasonable nexus" between (1) "*instant messages*" regarding the subject companies' "offering of incentives, gifts or gratuities to any U.S. Government representative or employee" on the one hand, and (2) the alleged crime of illegal gratuities undertaken by the "subject companies" on the other. Id. (emphasis added)

Of particular relevance to Judge Olguin's assessment of probable cause is the following passage from the McWhirter Affidavit:

> Based on my training and experience, I know that (1) purchases from
> online retail businesses such as Amazon and Tiger Direct are usually

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

> transacted utilizing computers; and (2) companies that do business
> with the United States Government typically utilize and store requests
> for proposals, pricing requests, proposals [sic], estimates, quotations
> price sheets, purchase requisitions, purchase orders, shipping records,
> receiving records, inspection records, invoices, payments,
> remittances, memoranda, notes, *correspondence* and other documents
> at their place of business.

McWhirter Affidavit, ¶ 19 (Bates 1355) (emphasis added).  Defendant notes that this passage does not specifically mention "instant messages" and, more generally, defendant argues that the entirety of the McWhirter Affidavit fails to establish even a reasonable nexus between the evidence to be seized (instant messages stored on the computer devices located at MDP headquarters) and the alleged crime (illegal gratuities paid to government officials).

In its opposition, the government first argues that the relevant "locations" to be searched under the warrant are the *digital devices* housing the Yahoo! instant messages, and not the cache of Yahoo! instant messages *stored on the digital devices*.  Opp'n at 16 (citing United States v. Crews, 502 F.3d 1130, 1136–37 (9th Cir. 2007)).  In other words, the government contends that there must only be probable cause to search the digital devices and not necessarily the cache of instant messages on the devices.  With this in mind, the government argues that two of McWhirter's assertions—namely, his assertions that (1) MDP and MIS were purchasing gifts to be provided to federal employees via *online* retailers Amazon and Tiger Direct, and (2) that MDP and MIS sent orders and gifts "via *electronic mail*"—collectively provided a "substantial basis [for Judge Olguin] to conclude that evidence related to the payment of illegal gratuities would be found *on the digital devices* seized from MDP's premises, thus, permitting the search of these devices."  Opp'n at 11 (citing McWhirter Affidavit,  ¶¶ 16, 20) (emphasis added).

As an initial matter, the Court concludes that the relevant inquiry is whether the affidavit generated probable cause to search the particular *cache of data* stored on the device—that is, the Yahoo! instant messages—and not simply the entirety of the contents on the electronic devices, as the government contends.  As the Ninth Circuit has explained, the "pressing need of law enforcement for broad authorization to examine electronic records . . . creates a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant."  United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1176 (9th Cir. 2010) (en banc) ("CDI II").  Accordingly, while the Ninth Circuit has previously recognized the "legitimate need to scoop up large quantities of data, and sift through it carefully for concealed or disguised pieces of evidence," id. (citing United States

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

v. Hill, 459 F.3d 966 (9th Cir. 2006)), "[t]he process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect." Id. at 1177. Indeed, the government itself argues later in its opposition that although "law enforcement *copied* the entirety of the digital devices, they *seized* only that evidence which bore a reasonable nexus to the crime being investigated, *as required by the search warrant*." Opp'n at 22 (emphasis added).

Regardless, in light of the "great deference" to which a magistrate judge's finding of probable cause is entitled, Clark, 31 F.3d at 834, the Court finds that Judge Olguin had a "'substantial basis for . . . conclud[ing]' that a search [of the Yahoo! instant messages located on the various MDP electronic devices] would uncover evidence of wrongdoing." Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). The necessarily "deferential approach" that the Court must take in reviewing Judge Olguin's probable cause determination "is the antithesis of a 'grudging or negative attitude' toward search warrants and a 'hypertechnical rather than a commonsense' analysis." Gourde, 440 F.3d at 1069 (citations omitted). The McWhirter Affidavit, which the Court is "not in a position to flyspeck . . . through de novo review," Gourde, 440 F.3d at 1069, explains that MDP and MIS employees corresponded with each other and customers regarding the illegal gratuities. McWhirter Affidavit ¶¶ 12, 13, 16, 20. Thus, as the government argues, "there is a reasonable nexus between evidence of the crime and a search of *correspondence* sent to and from MDP and MIS employees."[2] Opp'n at 17. Furthermore, the Court agrees that "it is a reasonable inference that

---

[2] Defendant argues that "absence [of any mention of defendant] from the statement of probable cause means that his Yahoo! instant messages should not have been seized," since "[a]lleged wrongdoing on the part of MIS employees does not amount to probable cause to permit a search of Ivan Greenhut's correspondence, including his private correspondence with his wife." Motion to Suppress at 9 (citing Grant, 682 F.3d at 832). However, the affidavit need not generate probable cause as to the messages of any one particular owner, manager, or employee of the subject companies. See Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."); United States v. Adjani, 452 F.3d 1140, 1146 (9th Cir. 2006) ("[The] argument that there was no probable cause to search [defendant's] computer, a private and personal piece of property, because the warrant failed to list her as a 'target, suspect, or co-conspirator' misunderstands Fourth Amendment jurisprudence. Although individuals undoubtedly have a high expectation of privacy in the files stored on their personal computers, we have never held that agents may establish probable cause to search only those items owned or possessed by the criminal suspect.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

such correspondence took place over more than one medium, including Yahoo! [instant messages] which MDP and MIS employees used to communicate." Id. at 17-18 (citing Greenhut Decl. ¶ 15.); see also Opp'n at 18 ("[I]t is [also] a reasonable inference from the affidavit that many forms of communication were used to commit the crime, thus rendering all correspondence-related categories supported by probable cause."). Accordingly, the Court concludes that Judge Olguin's warrant was supported by probable cause to search the Yahoo! instant messages on the seized electronic devices.

### 2.      Whether the Search Warrant Lacked Particularity or Was Overbroad as to the Seizure of the Yahoo! Instant Messages

Defendant argues that Category Six of the search warrant was overbroad "insofar as it authorized the seizure of Yahoo! Instant Messages from Ivan Greenhut, notwithstanding the lack of any evidence or analysis in the affidavit connecting Mr. Greenhut to the alleged crime." Motion to Suppress at 11. According to defendant, the overbroad provision, when "[c]ombined with the lack of a search protocol specified in the warrant, or any guidance on how non-seizable data would be protected," authorized an unconstitutional "exploratory rummaging" of defendant's Yahoo! correspondence. Id. (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)).

"In order for a search to be reasonable, the warrant must be specific . . . Specificity has two aspects: [1] particularity and [2] breadth." In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 856 (9th Cir. 1991) (citation omitted). "Particularity" requires that the warrant clearly state what is sought. Id. (citing United States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986)). As such, the "particularity requirement makes 'general searches under [a warrant] impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.' " United States v. Bridges, 344 F.3d 1010, 1016-17 (9th Cir. 2003) (quoting United States v. Cardwell, 680 F.2d 75, 77 (9th Cir. 1982)). The related "concept of breadth may be defined as the requirement that there be probable cause to seize the particular thing named in the warrant." In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d at 857. In other words, breadth "deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." Id. at 856-57 (citing Cardwell, 680 F.2d at 78 ("Generic classifications in a warrant are acceptable only when a more precise description is not possible."))

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Upon a review of the warrant, the Court concludes that it was sufficiently specific; that is to say, the targeted "correspondence" and "instant messages" mentioned in Category Six were (1) described with sufficient particularity and were (2) within the scope of the probable cause on which the warrant was based.  As the government argues, the warrant (1) provided a description of the crime being investigated, (2) expressly delineated and limited the categories of items to be seized (including Category Six), (3) narrowed the search of certain categories of documents to specific government employees and to certain gifts provided by MDP and MIS, and (4) also included a date range of four years.  <u>See generally</u> Search Warrant.

With respect to the off-site search protocol for the data on the digital devices, the affidavit explained the reasons why "time, expertise, and [a] controlled environment [were] required for a proper analysis" of such a large swath of electronic data.  <u>United States v. Hay</u>, 231 F.3d 630, 637 (9th Cir. 2000); <u>see also</u> McWhirter Affdavit ¶ 31(a)-(g); <u>United States v. Fries</u>, 781 F.3d 1137, 1151 (9th Cir. 2015) (holding search warrant was not overbroad because "[t]he search warrant affidavit sufficiently explained that seizure of [defendant's] computers was required because of the difficulty in analyzing the computers on-site and the potential for alteration or destruction of the computers' components, including business records.").  With respect to a specific search protocol, the Search Warrant provides, in relevant part, that "[i]n searching for digital devices and in searching digital data stored on digital devices, law enforcement personnel executing th[e] search warrant will employ the following procedure:"

a.  Law enforcement personnel or other individuals assisting law enforcement personnel will, in their discretion, either search the digital devices on-site or seize and transport the devices to an appropriate law enforcement laboratory or similar facility to be searched at that location.  The team of law enforcement personnel . . . may include the investigating agents, and/or individuals assisting law enforcement personnel[.]

b.  The team searching the digital devices will do so only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant . . . The team may subject all of the data contained in the digital device capable of containing items to be seized as specified in this warrant to the protocols to determine whether the digital device and any data falls within the items to be seized as set forth herein.  The team searching the digital device may also search for and attempt to recover "deleted," "hidden" or encrypted data to determine, pursuant to the protocols, whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

data falls within the list of items to be seized as set forth herein . . .
The team searching the digital device also may use tools to exclude
normal operating system files and standard third-party software that
do not need to be searched.

c.  When searching a digital device pursuant to the specific protocols
selected, the team searching the digital device shall make and retain
notes regarding how the search was conducted pursuant to the
selected protocols.

\*\*\*

f.  Notwithstanding the above, after the completion of the search of
the digital devices as set forth in subparagraph (a) above, the
government shall not access digital data falling outside the scope of
the items to be seized in this warrant on any retained digital devices
or digital data absent further order of court.

Search Warrant, Attachment B, ¶ 17(a),(b),(c),(f) (Bates 1322-26).

The Court is unpersuaded by defendant's argument that the lack of a more specific
search protocol in the warrant, or "any guidance on how non-seizable data would be protected,"
authorized an unconstitutional "exploratory rummaging" of defendant's Yahoo!
correspondence.  Motion to Suppress at 11 (quoting Coolidge, 403 U.S. at 467 ).  Although it is
true that the Search Warrant did not specify the precise means by which the off-site digital
search would be conducted—for example, by delineating keyword search terms to be used in a
forensic analysis of the data—no such degree of specificity is required.  Hill, 459 F.3d at 978.
While the Ninth Circuit "look[s] favorably upon the inclusion of a search protocol," "its
absence is not fatal."  Id.  This is, in part, because "even though a warrant authorizing a
computer search might not contain a search protocol restricting the search to certain programs
or file names, the [agent executing the search] is always 'limited by the longstanding principle
that a duly issued warrant, even one with a thorough affidavit, may not be used to engage in a
general, exploratory search.'"  Id. (citation omitted) (noting also that "there is no case law
holding that an officer *must* justify the lack of a search protocol in order to support issuance of
the warrant").

Therefore, in accordance with the foregoing, the Court concludes that the Search
Warrant was not insufficiently particular or impermissibly overbroad.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

3. **Whether the Agents Exceeded the Scope of the Search Warrant in Seizing the Yahoo! Instant Messages**

Defendant also argues that the agents' execution of the warrant went beyond the warrant's permissible scope and thus requires suppression of the seized evidence. Specifically, defendant contends that the "seizure of *the entire contents* of Ivan Greenhut's Yahoo! Instant Message file, including three years of messages with his wife on all types of topics plainly outside of the scope of the warrant, requires suppression." Motion to Suppress at 12 (citing Ex. D at Bates 784-1070) (emphasis added). As defendant rightly notes, the warrant did not provide for the indiscriminate seizure of all instant messages on the devices, but rather called for seizure of "[a]ll correspondence records [1] *related to* the SUBJECT COMPANIES' offering of incentives, gifts or gratuities [2] *to any U.S. Government representative or employee*, specifically; memoranda, letters, transmittals, electronic mailings, and instant messages." Search Warrant, Attachment B, ¶ 6 (Bates 1319) (emphasis added). Defendant accordingly argues that very few of his Yahoo! instant messages actually "relate to" the issue of gifts "to any U.S. Government representative or employee," but many such messages were nonetheless searched, seized, and ultimately produced to the defense "wholesale." Motion to Suppress at 13-14. This purportedly "flagrant disregard" of the scope of the warrant yielded damaging evidence, according to defendant, including an instant message which essentially served as the basis for the entirely unrelated charge of witness tampering, now count II in the indictment. Id. at 14 (citing August 9, 2011 instant messages from Ivan Greenhut to Carol Greenhut).

"The principles relating to execution of search warrants are well known. To pass constitutional muster, the 'search must be one directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed.'" United States v. Johnston, 789 F.3d 934, 941 (9th Cir. 2015) (quoting United States v. Rettig, 589 F.2d 418, 423 (9th Cir. 1978)). When the defendant challenges the manner in which a search was conducted, the Court must examine the language of the search warrant and ask whether "a reasonable officer [would] have interpreted the warrant to permit the search at issue." United States v. Gorman, 104 F.3d 272, 274 (9th Cir. 1996). Thus, "a search authorized by a valid warrant may nonetheless be unreasonable if the officers conducting the search exceed the scope of the warrant and, for example, begin looking for files that are not related to the subject of the search warrant." Johnston, 789 F.3d at 941 (citation omitted).

As an initial matter, the government contests defendant's assertion that there was a "*seizure* of *the entire contents* of Ivan Greenhut's Yahoo Instant Message file." See Opp'n at 24-25 (emphasis added). In sworn declarations filed in support of the government's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

opposition, special agents who conducted the off-site data search of the electronic devices aver that they did not review every Yahoo! instant message available to them, but rather followed an off-site search protocol contemplated, albeit in broad strokes, by the warrant itself. See Search Warrant, Attachment B, ¶ 17(a)-(h); Howard Decl. ¶¶ 11-16.  The Search Warrant's provisions regarding the search of the stored data are reviewed *supra* at Part C.2.  With respect to the execution of the procedure contemplated by the Search Warrant, Special Agent Howard states in his declaration that he conducted the off-site search of the data "over the course of a few days" in late October and early November of 2012.  Howard Decl. ¶ 12.  Specifically, SA Howard avers that he "had the search warrant available for his review while was searching the digital devices," and that "in order to permit [a] search for evidence related to the crime of paying illegal gratuities," he "created a list of approximately 30 search terms based upon [his] knowledge of the investigation at th[e] time."  Id. ¶¶ 11, 13.  These search terms were run "one at a time" against the forensic images of the digital devices, though SA Howard states that he would add additional terms to reduce the search results to the extent any search "resulted in a large number of hits."  Id. ¶ 14.  These additional terms are reflected in the final search term list.[3]  SA Howard states that he reviewed "only the files that returned from the narrower searches"—for example, any Yahoo! instant messages containing the terms "apple" and "gift," as opposed to those containing only the term "apple."  Id.

More generally, SA Howard says that he "reviewed only the internet/chat files and other files which returned from [his] keyword search"—in total, only "several hundred unique files"—and nowhere near the total of 602,522 internet/chat files on the 11 devices.  Id. ¶ 16. The government argues that these assertions are corroborated by the Yahoo! instant messages themselves, which stem from a variety of dates over a long stretch of time (five dates in 2008,

---

[3] The final list of search terms was as follows:

(1) iPad; (2) invoice [and] iPad; (3) nintendo; (4) navy [and] starbucks [and] GC; (5) USMC [and] navy [and] starbucks [and] GC; (6) starbucks [and] government [and] gc [and] gift card [and] gsa; (7) government; (8) ipad [and] ivangreenhut; (9) gift [and] ivangreenhut; (10) EDD [and] ivangreenhut; (11) gift [and] cindymdpmasters; (12) nasa; (13) gift [and] analynmisquimpo1; (14) apple [and] gift; (15) gift [and] carol; (16) abbymdpcruz [and] gift; (17) IRS; (18) taxes; (19) gift; (20) bribe; (21) income statement; (22) balance sheet; (23) bookkeeper [or] accountant [or] cpa; (24) statement of operations; (25) government [and] gift; (26) illegal; (27) gift [and] navy; (28) underreporting; (29) reported [or] reporting [or] under; and (30) debbie garcia.

Howard Decl., Ex. A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

three dates in 2009, seven dates in 2010, and six dates from 2011), Opp'n at 25 (citing Motion to Suppress, Ex. D.), despite Carol Greenhut's assertion that she "frequently communicated" with defendant over Yahoo! Instant Messenger.  Carol Greenhut Decl. ¶ 15.

Upon review of the sworn declarations submitted in support of the government's opposition, the Court is not persuaded that the agents executing the search acted in "flagrant disregard" of the warrant's scope—that is, they did not "transform the search into an impermissible general search by ignoring the terms of the warrant and engaging in indiscriminate fishing."  United States v. Chen, 979 F.2d 714, 717 (9th Cir. 1992).  As discussed *supra*, the law does not require the Search Warrant to specify particular search terms to be employed in a keyword search of the computer's contents.  Hill, 459 F.3d at 977 (rejecting defendant's contention that the search warrant was overbroad because (1) the warrant lacked "a search protocol to limit the officers' discretion as to what they could examine when searching the defendant's computer media" and (2) the affidavit failed to "explain why such a protocol was unnecessary"); see also United States v. Mann, 389 F.3d 869, 877 (9th Cir. 2004) ("While a search warrant must describe items to be seized with particularity sufficient to prevent a general, exploratory rummaging in a person's belongings, it need only be *reasonably specific*, rather than elaborately detailed.") (internal quotation marks and citation omitted) (emphasis added).

The operative question, rather, is whether "a reasonable [agent would] have interpreted the warrant to permit the search" as constructed and ultimately executed by SA Howard. Gorman, 104 F.3d 272, 274.  Applying this standard, the Court concludes that the execution of the search passes constitutional muster.  Again, the warrant permitted seizure of "[a]ll correspondence records [1] related to the SUBJECT COMPANIES' offering of incentives, gifts or gratuities [2] to any U.S. Government representative or employee, specifically; memoranda, letters, transmittals, electronic mailings, and instant messages."  See Search Warrant, Attachment B, ¶ 14 (Bates 1319) (emphasis added).  In addition, the McWhirter Affidavit stated that "[t]he team searching the digital devices will do so only by using search protocols specifically chosen to identify *only the specific items* to be seized under this warrant." McWhirter Affidavit ¶ 48(b) (Bates 1374).  In conducting the search, the team was expressly permitted to "subject *all of the data* contained in the digital device *capable of containing* items to be seized . . . to the [search] protocols to determine whether the digital device and any data falls within the items to be seized . . .."  Id. ¶ 48(b)(I) (emphasis added).  The methodology employed by SA Howard "related directly to this mandate," and his search terms do not indicate an attempt at "digging around in unrelated files or locations that might have prompted the need for a second warrant."  Johnston, 789 F.3d at 942.  Plainly, all of the instant messages between defendant and Carol Greenhut were "capable of containing" items to be seized—that is, instant messages "[1] related to the SUBJECT COMPANIES' offering of incentives, gifts or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

gratuities [2] to any U.S. Government representative or employee."  See McWhirter Affidavit ¶ 48(b) (Bates 1374); Search Warrant, Attachment B, ¶ 14 (Bates 1319).  The particular search method that SA Howard employed against the large swath of instant messages appears to be "one directed in good faith toward the objects specified in the warrant,"  Rettig, 589 F.2d at 423, and accordingly was not improper.[4]

Defendant resists this conclusion, arguing that because the seized chats contain many messages that are not expressly (1) "relate[d] to" the issue of gifts (2) "to any U.S. Government representative or employee"—messages that, for example, discuss politics, taxes, travel, and business staffing decisions—the agents must have acted with a flagrant disregard for the limits of the warrant, as they failed to seize only instant messages that meet the two limiting criteria outlined in Category Six.  Reply at 9.  Relatedly, defendant argues that at the least, the Court should suppress all communications that do not strictly (1) relate to the issue of gifts (2) to any U.S. Government representative or employee.  Id.  According to defendant, suppression in accordance with such criteria would leave only a single instant message exchange, because defendant contends that all others fail to meet the limiting criteria of Category Six.  Id. (citing January 28, 2011 exchange).  This argument fails, however, as it appears premised upon the false assumption that a properly executed search, appropriately tailored to locate items contemplated by the search warrant, must actually *yield* only items contemplated by the search

---

[4] Defendant disputes this conclusion, both in his moving papers and again at oral argument, but defendant's arguments are ultimately unavailing.  Specifically, defendant argues that SA Howard's search protocol impermissibly included terms "unconnected to federal government employees (e.g. a state government agency, "EDD"), terms without a defined limit (e.g. "government") and terms unsupported by probable cause, including Mr. Greenhut himself (e.g. "gift [and] ivangreenhut")."  Reply at 10 n.2 (citing Dkt. 32, Ex. B at Bates 2740).  At oral argument, defendant also argued that SA Howard's declaration indicates that he created his list of search terms "based on [his] knowledge *of the investigation at that time,*" Howard Decl. ¶ 13, which defendant contends is impermissible, as it implies that the keyword search was not strictly based upon the Search Warrant and the McWhirter Affidavit.  Again, however, to the extent to which defendant quibbles with particular terms that SA Howard chose for his keyword search, the Court is unpersuaded—having looked at the list of search terms—that SA Howard "did not confine [his] search in good faith to the objects of the warrant, and that while purporting to execute it, [he] substantially exceeded any reasonable interpretation of its provisions."  Rettig, 589 F.2d 423.  Indeed, the Court finds that even the terms that defendant highlights as impermissible—such as "ivan greenhut" and "government"—were supported by probable cause and reasonably likely to yield evidence expressly contemplated by the warrant and the McWhirter Affidavit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

warrant.  Simply put, this is not the law.  In the Ninth Circuit, "[a]s long as an item appears, at the time of the search, to contain evidence reasonably related to the purposes of the search, there is no reason absent some other Fourth Amendment violation to suppress it.  The fact that an item seized happens to contain other incriminating [or non-incriminating] information not covered by the terms of the warrant does not compel its suppression, either in whole or in part." United States v. Beusch, 596 F.2d 871 (9th Cir. 1979); see also Adjani, 452 F.3d at 1149 (rejecting defendants' argument that officers should have looked at only specified areas of certain email programs for enumerated keywords because "[t]o require such a pinpointed computer search, restricting the search to an email program or to specific search terms, would likely have failed to cast a sufficiently wide net to capture the evidence sought").

Indeed, such a narrow reading of the warrant's scope would render it nearly impossible for the government to seize evidence that is in fact "relate[d] to" the issue of gifts "to any U.S. Government representative or employee."  See Hill, 459 F.3d at 978 ("Forcing police to limit their searches to files that the suspect has labeled in a particular way would be much like saying police may not seize a plastic bag containing a powdery white substance if it is labeled 'flour' or 'talcum powder.'").  As the Ninth Circuit has recognized, "[t]he problem can be stated very simply":

> There is no way to be sure exactly what an electronic file contains without somehow examining its contents—either by opening it and looking, using specialized forensic software, keyword searching or some other such technique.  But electronic files are generally found on media that also contain thousands or millions of other files among which the sought-after data may be stored or concealed.  By necessity, government efforts to locate particular files will require examining a great many other files to exclude the possibility that the sought-after data are concealed there.

CDI II, 621 F.3d at 1176.  Admittedly, the fact that "over-seizing is an inherent part of the electronic search process" necessitates "greater vigilance on the part of judicial officers in striking the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures." Id. at 1177.  The Court concludes, however, that the "right balance" appears to have been struck here, and accordingly the Court finds that the forensic search of the electronic devices and the Yahoo! instant messaging data contained therein did not exceed the scope of the warrant.

**D.     Conclusion**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

In accordance with the foregoing, defendant's motion to suppress is hereby **DENIED**.[5]

## III.   MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT

### A.   Introduction & Background

On October 26, 2015, defendant filed a motion to strike surplusage from the indictment. Dkt. 31.  The government filed an opposition to defendant's motion on November 2, 2015, dkt. 41, and defendant replied on November 9, 2015, dkt. 47.  Through his motion, defendant seeks to strike from the indictment (1) all references to the subject companies' billing practices and relationship to a GSA-approved contract, as well as (2) the alleged dollar amount of any gratuities and government purchases.

Specifically, defendant seeks to strike the following portions of the indictment:

> On or about March 28, 2008, the General Services Administration ("GSA") awarded MDP a schedule contract, which made MDP a preferred provider of certain items to federal agencies and allowed MDP to sell items to U.S. Government contracting officers through a streamlined process.  In exchange, MDP agreed to sell items at predetermined prices and to follow conditions set forth in the GSA contract.[6]  [Indictment ¶ 1.]

> On or about January 29, 2009, GSA denied MIS' application for a GSA contract.  [Id. ¶ 2.]

---

[5]  Because the Court denies defendant's motion to suppress evidence on the merits, it need not consider the Government's procedural argument that the motion violates Central District Local Criminal Rule 12-1.1 ("A motion to suppress shall be supported by a declaration on behalf of the defendant . . . .").  See United States v. Chong, No. CR 15-00176-AB, 2015 WL 5156438, at *14 (C.D. Cal. Sept. 2, 2015).

[6] Defendant also seeks to strike paragraph 5(a), which is largely duplicative of paragraph 1.  See Indictment ¶ 5(a) ("On or about March 28, 2008, MDP obtained a GSA schedule contract which allowed it to sell office supplies and other item to U.S. Government contracting officers at pre-determined prices under the conditions in the contract.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Because MIS did not have a GSA Schedule contract, MIS billed the U.S. Government agencies through MDP.  [Id. ¶ 5(i).]

U.S. Government agencies paid MDP for the items purchased, and MDP passed on the revenue generated from these sales to MIS.  [Id. ¶ 5(j).]

MIS and MDP paid a total of approximately $42,590 in gifts provided to these U.S. Government contracting officers; and . . . U.S. government contracting officers who received gifts purchased over approximately $3,000,000 in supplies from MIS.  [Id. ¶ 5(l).]

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## B.  Legal Standard

Pursuant to Federal Rule of Criminal  Procedure 7(d), "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."  Fed. R. Crim. P. 7(d). The aim of a motion to strike is "to protect a defendant against 'prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'"  United States v. Terrigno, 838 F.2d 371, 373 (9th Cir. 1988) (quoting United States v. Ramirez, 710 F.2d 535, 544-45 (9th Cir. 1983)).  However, while facts in the indictment "may be somewhat prejudicial," they should not be stricken if they are "relevant and material to the charge[d]" offenses.  Id.. Further, "[m]otions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial."  United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990) (internal citations and quotation marks omitted));  see also United States v. Gerlay, 2009 WL 3872143, at *1 (D. Alaska Nov. 17, 2009) ("[I]f language in the indictment constitutes information that the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be as long as the information is legally relevant.").

## C.  Discussion

Defendant first argues that paragraphs 1, 2, and 5(a), (i) and (j) of the indictment contain "allegations related to MDP's and MIS's use, and implied mis-use, of the GSA contract to provide products to U.S. government contractors."  Motion to Strike, at 4.  Indeed, portions of the indictment allege that "[b]ecause MIS did not have a GSA Schedule contract, MIS [improperly] billed the U.S. Government agencies through MDP," which then impermissibly "passed on the revenue generated from these sales to MIS."  Indictment ¶ 5(i),(j).  According to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

defendant, these descriptions of unlawful business practices could conceivably be relevant to the indictment if the government were seeking to prove that the practices were indeed unlawful.  Motion to Strike, at 5 (citing United States v. Laurienti, 611 F. 3d 530, 547 (9th Cir. 2010)).  Here, however, defendant argues that these allegations are "largely a vestige of an investigation that the government undertook into possible charges of mail and wire fraud"—charges that were not ultimately filed.[7]  Reply at 2.  Similarly, defendant further contends that the "implicit 'but for' link between the [$42,590 in] gratuities and the purported $3,000,000 in purchases is neither relevant nor material to the conspiracy to pay a gratuity."  Reply at 7.  Any such insinuation, according to defendant, would be relevant to a bribery charge because, unlike a charge of "payment of a gratuity to a government official," a bribery charge requires proof of "a quid pro quo—a specific intent to give or receive something of value in exchange for an official act."  United States v. Sun-Diamond Growers of California, 526 U.S. 398, 404 (1999).

In opposition to the instant motion, the government argues that all of the statements in the indictment are legally relevant, are directly related to the government's proof at trial, and are "necessary to explain to the jury how defendant committed the crimes charged."  Opp'n at 5.  Specifically, the government intends to prove that defendant "gave, offered, or promised things of value, i.e., illegal gratuities, through MIS, which, in turn, provided those things of value to MDP, which, in turn, provided those things of value to the public officials."  Id. at 5-6.  In addition, the government contends, among other things, that the high dollar value of the gifts is relevant to rebutting an anticipated defense—namely, that the defendant was unaware of the gift-giving activities of his employees.

Whether to grant a motion under Rule 7(d) is a decision that "rests in the discretion of the district court."  United States v. Daniel, No. CR 09-00993 MMM, 2010 WL 749873, at *4 (C.D. Cal. Feb. 22, 2010) (citing Terrigno, 838 F.2d at 373).  In light of the aforementioned authority and the general principle that "Rule 7(d) has been strictly construed against striking surplusage," United States v. Rezaq, 134 F.3d 1121, 1134 (D.C. Cir. 1998), the Court declines to strike any portions of the indictment.  The purpose of a motion to strike surplusage in the indictment is "to protect a defendant against '*prejudicial or inflammatory* allegations that are

---

[7] Defendant explains that before filing the indictment, the government conducted a "Reverse Proffer" session with defendant, which included a PowerPoint presentation.  Reply at 7 n.1.  One of the potential objects of the conspiracy addressed in that presentation, but not charged in the indictment, was "[i]mproperly obtain business by representing MIS as GSA approved supplier."  Motion to Strike, Ex. B (PowerPoint slide, "OBJECTS of the CONSPIRACY: Mail/Wire Fraud").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

neither relevant nor material to the charges.'" Terrigno, 838 F.2d at 373 (emphasis added) (citation omitted); see also United States v. Thomas, 875 F.2d 559, 562 n.2 (6th Cir. 1989) ("[I]if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant"). Here, it seems clear that the subject statements are relevant and material to the charges and to the case that the government intends to put on at trial, even if they are not, in the strictest sense, absolutely "essential facts constituting the offense[s] charged." Fed. R. Crim. P. 7(c)(1).

Furthermore, to the extent to which defendant is concerned that the jury may be prejudiced by reading or hearing the precise language in the indictment, the Court does not intend to allow the jury to review the indictment at any time.[8] In addition, to the extent to which defendant contends that some of the language in the indictment is "at odds with the evidence produced by the government in discovery," defendant will, of course, have ample opportunity to seek admission of such relevant evidence through pretrial motions and at trial.[9]

---

[8] At oral argument, counsel for the defendant indicated that the Court's intention not to allow the jury to review the indictment at any time significantly allayed his concern with any purported surplusage in the indictment.

[9] For example, defendant argues that "evidence of the purported link [between the more than $42,000 in gratuity payments and the $3,000,000 in government purchases] is also at odds with the evidence produced by the government in discovery." Motion to Strike, at 8 (citing Ex. C (Interview with Procurement Official #1, at ll. 13-15) ("[T]he only reason that I ever go through Modern Imaging or Modern Data is because they did give me a better price than all the other companies."); Ex. D (Interview with Procurement Official #2, at ll. 3-7) (Question: "But what you are telling me it does seem like it does influence you to go back to them?" Answer: "Well not really because, not for me because that is the only person I could do business with at the time.")).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

**D.**     **Conclusion**

In accordance with the foregoing, defendant's motion to strike surplusage from the indictment is hereby **DENIED**.

**IV.     CONCLUSION**

In accordance with the foregoing, defendant's motion to suppress evidence, dkt. 32, and motion to strike surplusage from the indictment, dkt. 31, are **DENIED**.

IT IS SO ORDERED.

|  |  |  |
|---|---|---|
| 00 | : | 00 |

Initials of Deputy Clerk        CMJ