UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cr-00477-CAS-1 | Date | November 8, 2016 |
|---|---|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Christopher Kendall, Not Present<br>Poonam Kumar, Not Present<br>Bruce Riordan, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| IVAN GREENHUT | NOT | | X | ERIN DARLING, DFPD<br>KOREN BELL, DFPD | NOT<br>NOT | X<br>X | |

| **Proceedings:** | **(IN CHAMBERS) - DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL (Dkt. 164, filed August 15, 2016)** |
|---|---|
| | **DEFENDANT'S MOTION FOR A NEW TRIAL (Dkt. 166, filed August 15, 2016)** |

## I.   INTRODUCTION & BACKGROUND

On September 1, 2015, defendant Ivan Greenhut was charged in a three-count indictment with payment of a gratuity to a public official, in violation of 18 U.S.C. § 201(c)(1)(A); conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371; and witness tampering, in violation of 18 U.S.C. § 1512(b)(3).  Dkt. 1 ("Indictment").  On November 17, 2015, the government superseded the original indictment by filing the First Superseding Indictment.  Dkt. 60 ("First Superseding Indictment").

The First Superseding Indictment charged defendant with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371 ("Count I"); witness tampering, in violation of 18 U.S.C. § 1512(b)(3) ("Count II"); and payment of a gratuity to a public official, in violation of 18 U.S.C. § 201(c)(1)(A) ("Count III").

According to the First Superseding Indictment, beginning in or about 2008 and continuing through about September 2012, defendant owned, with his then-wife Carol Greenhut, Modern Data Products ("MDP") and Modern Imaging Solutions ("MIS")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**            'O'

(collectively, the "subject companies"), which sold office supplies, furniture, electronic equipment, and other materials to customers. Id. ¶¶ 1–4. The gravamen of the First Superseding Indictment is that from 2008 to 2012, defendant, his then-wife Carol Greenhut, and others at MDP and MIS, illegally paid gratuities—in the form of cash, gift cards, Apple iPods, Apple iPads, computers, video game consoles, DVD players, cellular phones, and plasma televisions—to U.S. government contracting officials based upon the amount of supplies they purchased from MIS for their respective federal agencies. More specifically, the First Superseding Indictment alleges that during the relevant period, MIS and MDP paid a total of approximately $42,590 in gifts to federal agency officials and that these officials purchased approximately $3,000,000 worth of supplies from MIS. Id. ¶ 5(l).

According to the First Superseding Indictment, MDP was a California corporation with its principal place of business in Canoga Park, California, while MIS was a Delaware corporation with its principal place of business in Manila, Philippines. Id. ¶¶ 1–2. Defendant Ivan Greenhut lived and worked in Manila and owned 49 percent of the subject companies, while non-defendant Carol Greenhut lived and worked in Canoga Park and owned 51 percent of the subject companies. Id. ¶ 3. Although defendant Ivan Greenhut exclusively controlled and managed Manila-based MIS, he also exercised control over California-based MDP. Id. Non-defendant Carol Greenhut served as the office manager and bookkeeper of MDP, but also did some bookkeeping for MIS. Id.

The First Superseding Indictment further alleges that California-based MDP had a contract with the United States General Services Administration ("GSA"), which delineated pre-negotiated pricing terms and conditions and thereby permitted federal agencies to purchase items from MDP in a streamlined manner. Id. ¶ 5(a). Manila-based MIS did not have a GSA contract because, according to the operative indictment, GSA permitted only one contract per owner. Id. ¶ 5(i),(j). The operative indictment also alleges that MIS billed federal agencies for items purchased from MIS through MDP's GSA contract. Id.

On November 9, 2015, defendant filed a motion to dismiss the Indictment (all counts) for failure to state an offense and a motion to dismiss Count I of the Indictment.[1] Dkts. 48, 49. The government filed oppositions to defendant's motions on November 16, 2015. Dkts. 55, 56. Defendant filed his replies on November 23 and 24, 2015. Dkts. 81 and 82. Defendant requested that the Court dismiss all three counts of the Indictment for failure to state an offense—specifically, on the grounds that the Indictment fails to allege the occurrence of the requisite "official act" by a public official for purposes of Counts I and III, which thereby

---

[1] Although defendant's motions to dismiss were filed as to the original, superseded indictment, dkt. 1, the Court treated defendant's motions as having been renewed as to the First Superseding Indictment. See dkt. 121 at 1, n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL            'O'**

generates a lack of the requisite "commission or possible commission of a federal offense" for purposes of Count II.  On December 11, 2015, the Court denied defendant's motion to dismiss without prejudice.  Dkt. 121 ("Order").  The Court concluded that the allegations in the indictment regarding the purchase of office supplies by "*contracting officials* from U.S. government agencies" for "the U.S. Government contracting officers' respective federal agencies," First Superseding Indictment at I(C)(5)(b)–(c) (emphasis added), may constitute an "official act" under § 201(a)(3) and can, therefore, serve as the basis for stating an offense for an alleged violation of the Anti-Gratuity Statute, 18 U.S.C. § 201(c)(1)(A).  Order at 7.  Defendant also requested that the Court dismiss Count I of the Indictment because the "overt acts" identified in the Indictment either fell outside the statute-of-limitations period or were not "acts" for the purposes of the statute. In the First Superseding Indictment, the government cured the statute of limitations defects raised by defendant's motion.  The Court reserved judgment as to whether overt acts 1 through 6 in the First Superseding Indictment constitute valid "overt acts" for the purposes of Section 371.  Order at 12.

On December 11, 2015, a jury trial commenced on the First Superseding Indictment.  On December 16, 2015, at the close the government's case in chief and at the close of evidence, defendant moved for the Court to enter a judgment of acquittal as to all counts and elements based on insufficiency of the evidence.  The Court reserved judgment and requested post-trial briefing on the motion.

On December 15, 2015, the jury found defendant guilty of conspiracy, as charged in Count I, and guilty of paying an illegal gratuity to a public official, as charged in Count III. Dkt. 144.  The jury found defendant not guilty of witness tampering, as charged in Count II.  Id.

On June 26, 2016, the U.S. Supreme Court handed down its decision in McDonnell v. United States, 136 S. Ct. 2355 (2016).  In McDonnell, the Supreme Court interpreted the term "official act" under the Anti-Gratuity Statute, 18 U.S.C. § 201(a)(3).  Specifically, the Court concluded:

> [A]n "official act" is a decision or action on a "question, matter, cause, suit, proceeding or controversy."  The "question, matter, cause, suit, proceeding or controversy" must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee.  It must also be something specific and focused that is "pending" or "may by law be brought" before a public official.  To qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding or controversy," or agree to do so.  That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing

or intending that such advice will form the basis for an "official act" by another official. Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)—without more—does not fit that definition of "official act."

Id. at 2371–72.

On August 15, 2016, defendant filed a motion for a judgment of acquittal as to Counts I and III. Dkt. 164. On the same day, defendant filed a motion for a new trial in the event that the Court declined to grant a judgment of acquittal. Dkt. 166. Defendant largely relies on the Supreme Court's interpretation of the Anti-Gratuity Statute in McDonnell as the basis for his motions. On September 26, 2016, the government filed its opposition to defendant's motions. Dkt. 172 ("Opp'n"). Defendant filed his reply on October 10, 2016. Dkt. 173 ("Reply").

## III. LEGAL STANDARDS

### A. Motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29

Federal Rule of Criminal Procedure 29(c) provides that "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). Courts reviewing a motion for judgment of acquittal under Rule 29(c) apply the same test as a challenge to the sufficiency of the evidence. United States v. Ladum, 141 F.3d 1328, 1337 (9th Cir. 1998). When considering a motion for judgment of acquittal, the Court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hursh, 217 F.3d. 761, 767 (9th Cir. 2000). This is a two-step process: "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010). "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." United States v. Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010). "[A]ny conflicts in the evidence are to be resolved in favor of the jury's verdict." United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201–02 (9th Cir. 2000).

### B. Motion for a New Trial under Federal Rule of Criminal Procedure 33

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." United States v. A. Lanoy Alston,

D.M.D., P.C., 974 F.2d 1206, 1211 (9th Cir. 1992). "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." United States v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000). A motion for a new trial is "directed to the discretion of the district judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981).

## IV.   DISCUSSION

### A.   Defendant's Motion for a Judgment of Acquittal

#### 1.   "Official Act" after McDonnell – Counts I and III

##### a.   The Parties' Arguments

Defendant argues that the Court should grant a judgment of acquittal on Counts I and III because the "micropurchase" of office supplies, capped at a dollar amount, does not constitute and "official act" as construed by McDonnell. Dkt. 164 at 4–9; Reply at 2–3. Defendant contends that the narrow construction of "official act" set out in McDonnell does not include the micropurchases of simple goods by low-level government acquisition professionals because such purchases "are done *without* contracts," and the purchasers lack significant discretion on what to purchase and how to purchase the goods. Id. at 7. As a result, defendant argues that this "tightly controlled 'micropurchase' process contains none of the hallmarks of a lawsuit before a court, a determination before an agency, or a hearing before a committee." Id. at 9. Defendant argues that the purchase of office supplies by low-level officials cannot be an exercise of "formal" power under McDonnell, because that would mean that any decision taken in an official capacity would count as an 'official act." Id. Defendant contends that a "question" or "matter" under McDonnell is a decision that entails a deliberative public process to weigh competing public interests and a supply technician charged with purchasing offices supplies does not exercise sufficient discretion or engage in a thorough enough process to meet the standard set out in Section 201. Reply at 4–5. According to defendant, the government's interpretation of "official act" raises constitutional concerns because it is not sufficiently defined such that ordinary people can understand what conduct is prohibited. Reply at 6.

The government argues that the expenditure of government funds by government purchase cardholders remains an "official act" after McDonnell. Opp'n at 5. According to the government, McDonnell sets out a three-step inquiry: (1) was the decision or action at issue "on any question or matter;" (2) was the "question or matter" "pending" or otherwise by law brought before the public official; and (3) did the public official "[make] a decision or [take] an action 'on'" that question or matter. Opp'n at 5–6 (quoting McDonnell, 136 S. Ct. at 2368–72).

Following this framework, the government first argues that spending on office supplies constitutes a formal exercise of government power because government purchase cardholders decide how and where to spend government funds. Id. at 6–7. In addition, the government contends that the purchase cardholders' substantial responsibility and the fact that purchase cardholders are subject to oversight and regulation demonstrate the formality of the exercise of their authority. Id. at 7–8. Second, the government contends that the purchase of office supplies is a "pending" question or matter because it is "the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete," id. at 8 (quoting McDonnell, 136 S. Ct. at 2369), and because the purchase cardholders were acting within the specific scope of their duties, Opp'n at 8–9. Third, the government contends that purchase cardholders made a decision or took action on the question or matter because they made purchase orders, which constitutes the end of a decision-making process. Id. at 10. Accordingly, the government argues that the expenditure of government funds by acquisition professionals is an "official act" under the three prongs of the McDonnell inquiry. Id.

### b.     Analysis

The Anti-Gratuity Statute defines "official act" as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit."  18 U.S.C. § 201(a)(c)**.**

In McDonnell, the Supreme Court considered the "proper interpretation" of an "official act" under the federal bribery statute. In that case, the government indicted former Virginia Governor Robert McDonnell and his wife on bribery charges related to their acceptance of $175,000 in "loans, gifts, and other benefits" from Jonnie Williams, the chief executive officer of a company that developed nutritional supplements. McDonnell, 136 S.Ct. at 2361. Charges against McDonnell included honest services wire fraud under 18 U.S.C. § 1343. McDonnell, 136 S.Ct. at 2365. Based on Supreme Court precedent construing that offense as including the acceptance of bribes, the parties agreed to "define honest services fraud with reference to the federal bribery statute, 18 U.S.C. § 201." Id.

Accordingly, pursuant to § 201(a)(3), the government was required to prove that McDonnell committed (or agreed to commit) an "official act" in exchange for the benefits from Williams. The government alleged that Williams bribed McDonnell in exchange for "at least five" official acts: (1) arranging meetings with state officials regarding Anatabloc, a nutritional supplement; (2) hosting and attending events at the Governor's Mansion designed to encourage Virginia state universities to initiate studies of Anatabloc; (3) contacting officials with the Governor's Office as part of an effort to encourage Virginia state universities to initiate a study of Anatabloc; (4) allowing Williams to invite individuals with relationships to his company to

exclusive events at the Governor's Mansion; and (5) recommending government officials meet with Williams' company to discuss ways that Anatabloc could lower healthcare costs. Id. at 2365–66. Following his conviction and an unsuccessful appeal to the Fourth Circuit, McDonnell sought review by the Supreme Court.

Before the Supreme Court, McDonnell argued, inter alia, that the government's definition of "official acts" was overly broad and the Court agreed. In reviewing the "official acts" definition, the Court observed that it consists of two requirements: (1) the identification of a "'question, matter, cause, suit, proceeding or controversy' that 'may at any time be pending' or 'may by law be brought' before a[ny] public official;" and (2) proof that "the public official made a decision or took an action 'on' that question, matter, cause, suit, proceeding, or controversy, or agreed to do so." Id. at 2368. The Court interpreted "question, matter, cause, suit, proceeding or controversy" to "connote," "refer," or "involve" a "formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." Id. at 2368–69. The Court interpreted "pending" and "may by law be brought" to indicate a matter that is "relatively circumscribed—the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." The Court interpreted "may by law be brought" as conveying "something within the specific duties of an official's position—the function conferred by the authority of his office." Id. at 2369. Finally, the Court stated "'any' conveys . . . the matter may be pending either before the public official who is performing the official act, or before another public official." Id. Pursuant to these interpretations, the Court concluded: "Setting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about a research study or to gather additional information, however, does not qualify as a decision or action on the pending question of whether to initiate the study." Id. at 2371.

The government's purchase of office supplies falls squarely within McDonnell's construction of the term "official act." A rational trier of fact could have found that government purchases constitute a "formal exercise of government power." See United States v. Pomrenke, No. 1:15-cr-00033, 2016 WL 4074116, at *45 (W.D. Va. Aug. 1, 2016) (interpreting McDonnell on a motion for acquittal and concluding that an official's "purchase of products and services" and the award of a contract constituted sufficient evidence of a "formal exercise of government power"); see also Valdes v. United States, 475 F.3d 1319, 1324 (D.C. Cir. 2007) (a "question, matter, cause, suit, proceeding or controversy" refers to "a class of questions" that includes "What firm should supply submarines for the Navy?"). The defendant's argument that the purchases were "micropurchases" for "'simple' office supplies" is unavailing. Nothing in the Anti-Gratuity Statute or the Supreme Court's decision in McDonnell limits the meaning of "formal exercise of government power" to the *magnitude* of the official's decision or the contract. Similarly, the limited discretion of purchase cardholders and the high level of oversight do not suggest that a purchase cardholder does not formally exercise government

power.  Moreover, a rational trier of fact could have found that purchase cardholders *retain* discretion to determine the supplier from which they will purchase goods.  For example, Charles Lee, the Southern California and Nevada Director of Business Relations for the Federal Acquisition Service of the GSA, testified at trial that purchase cardholders decide "how" and "where" to purchase supplies, stating: "it's the purchase card holder's responsibility to then determine the most efficient and cost-effective manner" of procuring the identified supplies. Dkt. 151, T. 157:6–16, 157:24–158:1.  Deciding who does business with the government constitutes a formal exercise of power.  See Pomrenke, 2016 WL 4074116, at *45.  The Court further finds that the evidence presented at trial was sufficient to conclude that the decision to purchase of office supplies is a "pending" question or matter that "may be brought" before an official because purchasing office supplies is within the specific duties of government supply technicians.   For example, at trial, Mr. Lee confirmed that purchase cardholders are "people whose job it is to make purchases."  Dkt. 151, T. 157:12–15.  Lastly, the Court concludes that a rational trier of fact could have found that government supply technicians "took action" because purchase orders introduced at trial demonstrate that the supply technicians who received gifts purchased goods.

Taking into account the construction of "official act" set out in McDonnell, the Court finds that, a rational trier of fact could have found beyond a reasonable doubt that the purchase of office supplies constitutes a "question" or "matter" that is "pending" before a public official and that a public official made a decision or took an action 'on' that question or matter.  The Court therefore **DENIES** defendant's motion for acquittal on Counts I and III to the extent that the motion relies on McDonnell's construction of "official act."

### 2. Count Three

Count III of the First Superseding Indictment charged defendant with the giving, offering, and promising of a gratuity—specifically a $100 Safeway gift card purchased by MIS employee Kim Balia—to a public official, Dominic Gilliam, on or about July 2, 2012.  See First Superseding Indictment at 9.  Defendant argues that the Court should grant a judgment of acquittal on Count III for three reasons.  The Court addresses each of defendant's arguments in turn.

#### a. Link between the Alleged Gratuity and the "Official Act"

First, defendant argues that he is entitled to acquittal on Count III because the government failed to prove the requisite link between the alleged gratuity and a specific, circumscribed "official act" under the standard set out by McDonnell.  Dkt. 164 at 13–14.  Specifically, defendant avers that the government failed to establish that the $100 Safeway gift card that Balia gave to Gilliam was tied to a specific purchase of office supplies.  Id. at 14–15.

The government contends that the rewards points establish the necessary link between the illegal gratuity and an official act. Specifically, the government contends that the purchase of office supplies, which resulted in the earning of 1000 rewards points that were later redeemed for the $100 Safeway card given to Gilliam, constitute "an official act" that is "more specific and focused than a broad policy objective." Opp'n at 29–31 (quoting McDonnell, 135 S.Ct. at 2372). The government avers that the evidence showed that the gift was given because of the purchase of 1000 rewards points' worth of office supplies. Opp'n at 31.

"[I]in order to establish a violation of 18 U.S.C. § 201(c)(1)(A), the Government must prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given." United States v. Sun-Diamond Growers of California, 526 U.S. 398, 414 (1999). In McDonnell, the Supreme Court determined that the "pertinent 'question, matter, cause, suit, proceeding or controversy' must be more focused and concrete" than "Virginia business and economic development." 136 S. Ct. at 2369. Here, the purchase of office supplies "is more specific and focused than a broad policy objective." Id. at 2374. In addition, the government presented evidence demonstrating that Mr. Gilliam earned 1000 rewards points for his ordering of office supplies, and that these points were redeemed for the $100 Safeway gift card. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt a link between the $100 gift card conferred upon Gilliam and Gilliam's purchase of 1000 points worth of office supplies. Accordingly, the Court **DENIES** defendant's motion for acquittal on Count III to the extent defendant's motion relies on the argument that the government failed to prove the requisite link between the alleged gratuity and the "official act."

       **b.**    **Scope of the Unlawful Agreement**

Second, defendant argues that he is entitled to acquittal on Count III because the government failed to prove that the $100 Safeway gift card fell within the scope of any unlawful agreement that defendant entered. Dkt. 164 at 15. Defendant argues there was no evidence tying defendant to this specific act and that the employee who gave the gift was acting in contravention of defendant's directive to offer gift certificates of only $25. Id. at 15–16. Defendant contends that Balia's giving of the $100 gift card to Gilliam contravened his January 2011 rule prohibiting gifts over $25. Id. at 16. Defendant further avers that his $25 rule displaced his May 2010 rule limiting the value of gifts to ten percent of the gross profit on an order. Id.

The government contends that the illegal gratuity charged in Count III fell within the scope of the conspiracy because the employee who gave the $100 Safeway gift card to a government purchaser followed defendant's rule to give gifts no greater than 10% of the gross profit on an order and defendant's rule to give grocery gift certificates. Opp'n at 32. The

government further contends that defendant agreed to give gifts in violation of his supposed $25 rule. Id. at 33.

The government presented evidence at trial demonstrating, inter alia: that defendant closely controlled his business; that gifts with a value greater than $25 were regularly given even after defendant established the $25 rule in January 2011; that his $25 rule was a "line" for law enforcement officers; and that defendant advocated giving $600 in gift certificates to a customer during the same conversation in which he purportedly established the $25 rule. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the $100 gift card given to Gilliam fell within the scope of defendant's agreement to provide unlawful gifts, including those greater than $25, to his customers. Accordingly, the Court **DENIES** defendant's motion of acquittal on Count III to the extent it relies on the argument that the government failed to prove that the $100 gift to Gilliam fell within the scope of defendant's unlawful agreement.

### c.   Venue

Third, defendant argues that he is entitled to acquittal on Count III because venue was improper. According to defendant, the government failed to prove venue was proper because the evidence did not show that the essential conduct in violation of § 201(c)(1)(A) occurred in the Central District of California. Dkt. 164 at 10–13.[2] Defendant contends that Carol Greenhut's payment of a credit card bill—which included a charge for the purchase of the relevant gift card—in the district is not an element of the crime charged but a tangential fact that cannot create venue. Reply at 7.

The government argues that it established venue in the Central District of California by a preponderance of the evidence because defendant's co-conspirator Carol Greenhut partially committed the crime charged within the district by paying MDP's credit card bills in the Central District of California. Opp'n at 27–28. In addition, the government notes that venue is also appropriate pursuant to 18 U.S.C. § 3238 because the offense charged began outside of the United States and one or more joint offenders were first arrested or brought in the Central District of California. Id. at 27 n.7. However, the government concedes that this argument was never presented to the jury. Id. The government contends that even if it failed to meet its burden of proving venue, the proper remedy for improper venue is dismissal without prejudice. Id. at 28.

---

[2] At oral argument, defendant's counsel conceded that if the Court were to find venue improper, the appropriate remedy would be a dismissal, not an acquittal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL                    'O'**

"[A] defendant in a criminal case has a constitutional right to be tried in a district where the crime was committed." United States v. Lukashov, 694 F.3d 1107, 1119 (9th Cir. 2012) (citing U.S. Const. art. III, § 2, cl. 3). It is the government's burden to establish proper venue by a preponderance of the evidence. See United States v. Chi Tong Kuok, 671 F.3d 931, 937 (9th Cir. 2012). It is for the jury to determine that venue exists, but "[t]he sufficiency of the evidence to justify a finding on venue . . . is a question of law for the court." Lukashov, 694 F.3d at 1120.

To determine whether venue is proper, a court should first "identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999). "To determine the 'nature of the crime,' [the court] look[s] to the 'essential conduct elements' of the offense." United States v. Pace, 314 F.3d 344, 349 (9th Cir. 2002).

The parties agree that a gratuities offense is a "continuing offense" for venue purposes. Dkt. 164 at 11; Opp'n at 26 n.6.; see 18 U.S.C. § 3237 ("Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."). "[V]enue for a continuing offense is proper if an 'essential conduct element' of the offense begins in, continues into, or is completed in the charging district." Lukashov, 694 F.3d at 1120 (quoting 18 U.S.C. § 3237(a)). "In order to determine for venue purposes where a crime occurred we examine the key verbs in the statute defining the criminal offense to find the scope of relevant conduct." United States v. Corona, 34 F.3d 876, 879 (9th Cir. 1994) (quotation marks omitted). The key verbs in the anti-gratuity provision are "gives," "offers," and "promises." See 18 U.S.C. § 201(c)(1)(A); United States v. Douglas, 996 F. Supp. 969, 972 (N.D. Cal. 1998). Accordingly, the Court instructed the jury that the "essential conduct element" of § 201(c)(1)(A) is the giving, offering, or promising of a thing of value. See Dkt. 138 at 22 ("[Y]ou must find that, for venue purposes, the giving, offering, or promising of an illegal gratuity occurred in the Central District of California."). Here, viewing the evidence in the light most favorable to the prosecution, Balia's purchase of the gift occurred in the Philippines and the giving of the gift occurred via mail delivered to Gilliam in the Northern District of California. See Dkt. 164-1, Exs. A, B (Gov't Trial Exs. 22, 160).

The Court is not persuaded by the government's argument that Carol Greenhut's "possession of and payment of" a credit card within the Central District of California constituted the giving, offering, or promising of a thing of value. See Opp'n at 28. In United States v. Douglas, the court concluded that the reimbursement of the defendant's expenditures on gifts was not an element of the gratuity offense and, as a result, the location of the reimbursement could not establish venue. See 996 F. Supp. at 973 ("To find the defendant

guilty the jury need not have found that the defendant was reimbursed for these things of value."). The Court finds that the payment of a credit card bill, like the reimbursement in Douglas, was not an essential element of the gratuity offense. Indeed, Gilliam could have received the gift card in the mail and successfully used the card at Safeway—taking advantage of the gift—*before* Carol Greenhut paid her bill. Whether Carol Greenhut paid her credit card bill is a matter between her and her bank, and does not affect the giving of the gift card. In addition, Carol Greenhut's possession of the credit card within the Central District of California is not an essential element of the offense. The government argues that "without the payment of and ability to use a credit card located in the Central District of California, the crime charged in Count Three could not have been committed." Opp'n at 28. This misstates the test. The question is not whether *any* conduct within the district is a condition for the offense. The question is whether "an '*essential* conduct element' of the offense begins in, continues into, or is completed in the charging district." Lukashov, 694 F.3d at 1120 (emphasis added). The Court thus concludes that the government failed to prove by a preponderance of the evidence that the giving, offering, or promising of an illegal gratuity occurred in the Central District of California.

Even if the government had presented to the jury its argument for venue based on 18 U.S.C. § 3238, the Court may not rely on Section 3238 to determine venue in this case. Section 3238 provides for venue for offenses not committed in *any* district. See 18 U.S.C. § 3238 ("The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought[.]"). Here, the giving of the gift—an essential element of the gratuity offense—occurred in the Northern District of California.

The Court therefore concludes that venue for Count III is improper in the Central District of California.

A judgment of acquittal is not the appropriate remedy in the case of improper venue. United States v. Hernandez, 189 F.3d 785, 792 n.1 (9th Cir. 1999). "When venue has been improperly laid in a district, the district court should either transfer the case to the correct venue upon the defendant's request, or, in the absence of such a request, dismiss the indictment without prejudice." United States v. Ruelas-Arreguin, 219 F.3d 1056, 1060 n.1 (9th Cir. 2000) (citations omitted). "The double jeopardy clause does not bar reprosecution where charges are dismissed for lack of venue because 'the failure to establish venue does not go to guilt or innocence.'" Douglas, 996 F. Supp. at 975 (quoting United States v. Kaytso, 868 F.2d 1020, 1021 (9th Cir. 1988)). Defendant has not requested that the Court transfer the case and defendant has argued in his reply, see Reply at 7, and at oral argument that the Court should dismiss Count III. Accordingly, the Court concludes that dismissal without prejudice is appropriate. See United States v. Cestoni, No. 15-cv-0416-WHA, 2016 WL 2739349, at *3

(N.D. Cal. May 11, 2016) (upon finding improper venue, ordering dismissal without prejudice because defendant did not request to transfer the case to a different venue). Count III of the First Superseding Indictment is hereby **DISMISSED WITHOUT PREJUDICE** and the verdict on that count is **VACATED**

### 3.      Count One

Defendant argues that the Court should grant a judgment of acquittal on Count I because the gifts defendant agreed to give did not fall within the statutory prohibition against giving "anything of value." Defendant relies on the government's position in McDonnell, in which the United States argued that regulations promulgated by the Office of Government and Ethics ("OGE") create a safe harbor for gifts having an aggregate market value of $20, provided that the aggregate market value of gifts given by any one person shall not exceed $50 in the calendar year. Dkt. 164 at 18–20; see 5 C.F.R. § 2635.202. Defendant argues that a person's conduct is criminal under the anti-gratuity provision only if the person knew that his gifts were unlawful. Id. at 21–22. Defendant contends that he genuinely and reasonably (albeit mistakenly) believed that the $25 gifts he provided were less than the threshold amount prohibited by statute—i.e., within the safe harbor provided by the OGE regulations. Id. at 22. Therefore, defendant argues that he did not have the requisite mens rea to make his conduct illegal. Id. at 24. According to defendant, that he may have known of or acquiesced in gifts over $25 is not enough to convict him of conspiracy because conspiracy requires a showing of intention and agreement to accomplish a specific legal objective. Id. at 23–24.

The government contends that the evidence at trial showed that defendant never promulgated a rule limiting gifts to $25 and that the jury rejected defendant's argument that he instituted such a bright-line rule when it convicted defendant on Count III on the basis of a gift of $100. Opp'n at 13–18. The government therefore argues that the OGE's safe harbor provision does not affect the jury's verdict because the evidence showed that defendant violated even his mistaken view of the law. Id. at 19–20. Moreover, the government avers that even if defendant had a good faith belief that his conduct was legal, that would not affect his guilt on Count I. Id. at 20. According to the government, the government must show that a defendant knew his conduct was illegal and that the defendant had a bad purpose only when a criminal statute imposes a heightened mens rea requirement. Id. The underlying criminal statute, the Anti-Gratuity Statute, does not contain a heightened intent standard that a defendant's good faith belief would negate. Id. at 21, 25. Therefore, the government argues that the safe harbor provision has no effect on defendant's guilt. Id. at 25.

Even if defendant genuinely believed that he did not agree to give "anything of value" because he believed that gifts of $25 were not prohibited, *and* even if gifts with an aggregate market value of $20 are exempt from the anti-gratuity statute pursuant to OGE regulations, the

Court concludes that a rational trier of fact could have found beyond a reasonable doubt that the gifts defendant agreed to give violated the prohibition on giving "anything of value." The Court agrees with the government that the jury necessarily found that defendant had agreed to give gifts with a market value greater than $25 when it convicted defendant on Count III on the basis of a gift of $100. Moreover, Defendant's good faith belief that his conduct was legal is not relevant to the jury's finding of guilt. The mens rea requirement for conspiracy under 18 U.S.C. § 371 is determined by reference to the underlying offense. United States v. Baker, 63 F.3d 1478, 1493 (9th Cir. 1995). The illegal gratuities statute does not contain a mens rea standard, however, the Supreme Court has determined that the gratuities statute does not require specific intent. Sun-Diamond, 526 U.S. at 404–05 ("The distinguishing feature of each crime is its intent element. Bribery requires intent 'to influence' an official act or 'to be influenced' in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a quid pro quo-a specific intent to give or receive something of value in exchange for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken."); United States v. Ganim, 510 F.3d 134, 152 (2d Cir. 2007) ("As Sun–Diamond explained, what distinguishes a bribe from a gratuity is its intent element: only bribery requires 'the specific intent to give or receive something of value in exchange for an official act.'" (quoting Sun-Diamond, 526 U.S. at 404–05)); Valdes, 475 F.3d at 1335 ("As the Supreme Court explained in United States v. Sun-Diamond Growers, the difference between bribery and gratuity is one of intent."). "The inability to form specific intent has never been a defense to general intent crimes." United States v. Erskine, 588 F.2d 721, 723 (9th Cir. 1978) (relying on United States v. Fahey, 411 F.2d 1213, 1214 (9th Cir. 1969)); United States v. Scarmazzo, 554 F. Supp. 2d 1102, 1107 (E.D. Cal. 2008) ("Lack of intent to violate the law is not a defense to a general intent crime.") aff'd sub nom. United States v. Montes, 421 F. App'x 670 (9th Cir. 2011). As a result, whether defendant had a bad purpose or believed that his conduct was illegal is not relevant to his guilt under Section 201. Furthermore, even if the OGE regulations create a safe harbor for gifts valued at $20 or less, a rational trier of fact could have found that defendant agreed to the giving of gifts greater than $20; defendant himself argued that he established a rule of giving gifts of $25. Cheek v. United States, 498 U.S. 192, 199, 111 S. Ct. 604, 609 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.").

The Court therefore **DENIES** defendant's motion for acquittal on Count I to the extent that the motion relies on defendant's argument that he did not violate the prohibition on giving "anything of value."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**              'O'

**B.     Defendants Motion for a New Trial**

Defendant argues that the Court should grant a new trial because of (1) improper jury instructions, and (2) the improper exclusion of evidence about the scope of the agreement that defendant made with employees that gave gifts.  Dkt. 166.

**1.     Jury Instructions**

**a.     The Parties' Arguments**

Defendant argues that the jury instructions were improper for three reasons.  First, the instructions failed to define "official act" properly under McDonnell because the jury was not instructed that it was required to identify a "question" or "matter' "involving the formal exercise of governmental power."  Dkt. 166 at 5–6.  Defendant argues that this error was "not harmless because the jury was inadequately guided on the multiple terms that help define 'official act.'"  Reply at 12–13.  Second, defendant argues that the jury instructions failed to comply with McDonnell because the instructions did not state that the jury was required to identify an "official act"—i.e., a "question" or "matter—that was "specific and focused."  Id. at 6–7.  Third, the instructions failed to define "anything of value" to exempt gifts having a market value of $20 and failed to include an instruction requiring the jury to evaluate whether defendant acted in accordance with a good faith but mistaken belief that the legal threshold was $25.  Id. at 8–9.

The government also argues that any error in the jury instructions was harmless.  Id. at 37.  According to the government, the absence of McDonnell instructions—including the phrases "involving the formal exercise of government power" and "specific" and "focused"— was harmless because the expenditure of government funds is clearly an "official act" and no jury could conclude otherwise.  Id. 38–41.  In addition, the government argues that instructions on a good faith defense and the OGE regulations would not have influenced a jury verdict because the jury heard and rejected defendant's argument that he instituted at $25 bright-line rule, thereby rejecting any good faith defense based on the OGE regulations.  Id. at 41.  The government contends that the jury convicted defendant of Count I on the basis of evidence showing that defendant knowingly agreed to give illegal gifts above $25 for or because of an official act.  Id. at 42.  The government also argues that the jury's conviction of defendant for conspiring to give a gift of $100 required the jury to conclude that defendant agreed to give gifts with a market value of $20.  Id. at 42–43.

At oral argument, the government argued that in McDonnell, the Supreme Court required greater specificity in the jury instructions regarding an "official act" because the instructions provided in that case were insufficiently clear.  The government contends that such confusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL          'O'**

was not present in the jury instructions in this case; therefore, the <u>McDonnell</u> clarifications were not necessary.

### b.   Analysis

When, as here, a defendant objects to an instruction at trial, the Court considers "whether the instructions—taken as a whole and viewed in context of the entire trial—were misleading or confusing, inadequately guided the jury's deliberations, or improperly intruded on the fact finding process." <u>United States v. Warren</u>, 25 F.3d 890, 898 (9th Cir. 1994). The Court charged the jury with the following relevant instructions:

Ivan Greenhut is charged in count three of the indictment with giving, offering, or promising an illegal gratuity in violation of Section 201(c)(1)(A) of Title 18 of the United States Code. In order for Ivan Greenhut to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, that Ivan Greenhut gave, offered, or promised something of value, namely, a one-hundred dollar Safeway gift certificate, to a public official, namely, Dominic Gilliam; and

Second, Ivan Greenhut acted for or because of an official act performed or to be performed by Dominic Gilliam, with all of you agreeing as to what official act Ivan Greenhut intended the public official to do in return for the gratuity.

The term "public official" means a Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror.

The term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or may by law brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

The government must prove a link between a thing of value conferred upon a public official and a specific "official act" for or because of which it was given.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**                'O'

> An illegal gratuity may constitute a reward for some future act the public official will take (and may already have determined to take) or for an act already taken.

Dkt. 138 at 19–20 ("Court's Instruction No. 18").

In McDonnell, the Supreme Court found three "problems" with the district court's jury instructions. First, the jury instructions "provided no assurance that the jury reached its verdict after finding [specified] questions or matters." McDonnell, 136 S.Ct. at 2374. To prevent the jury from thinking that "a typical meeting, call, or event was itself a 'question, matter, cause, suit, proceeding or controversy'" the Supreme Court found that "the District Court should have instructed the jury that it must identify a 'question, matter, cause, suit, proceeding or controversy' involving the formal exercise of governmental power." Id. "Second, the instructions did not inform the jury that the 'question, matter, cause, suit, proceeding or controversy' must be more specific and focused than a broad policy objective." Id. To "avoid the misconception" that the question or matter could be something "as nebulous as 'Virginia business and economic development[,]'" "the District Court should have instructed the jury that the pertinent 'question, matter, cause, suit, proceeding or controversy' must be something specific and focused that is 'pending' or 'may by law be brought before any public official.'" Id. "Third, the District Court did not instruct the jury that . . . it had to find that [defendant] made a decision or took an action—or agreed to do so—*on* the identified 'question, matter, cause, suit, proceeding or controversy,'" which excludes "merely arranging a meeting or hosting an event to discuss a matter." Id. (emphasis in original). As a result, it was "possible that the jury convicted Governor McDonnell without finding that he agreed to make a decision or take an action on a properly defined 'question, matter, cause, suit, proceeding or controversy.'" Id. at 2375.

The charge given to the jury in this case did not contradict McDonnell. The Court did not charge the jury that merely arranging a meeting, attending an event, hosting a reception, or making a speech are, standing alone, official acts. Furthermore, the Court finds its instructions satisfied the concerns of McDonnell. First, in requiring the jury to find that defendant "gave, offered, or promised" a particular gift to a particular official, the instructions in this case ensured that "the jury reached its verdict after finding [that] question[] or matter[,]" thereby avoiding the first problem identified in McDonnell. See id. at 2374. Second, the Court "avoid[ed] the misconception," id., that the relevant question or matter could be something "nebulous" because the Court charged the jury with finding "a link between a thing of value conferred upon a public official and a *specific* 'official act' for or because of which it was given." Court's Instruction No. 18. In addition, the Court satisfied McDonnell by instructing the jury that "'official act' means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be *pending*, or *may by law brought before any public official*." Id. Third, the Court avoided the possibility that the jury might think that

it could convict defendant without finding an agreement to perform or the performance of an official act because the Court charged the jury with finding that defendant "acted for or because of an official act *performed or to be performed* by Dominic Gilliam, with all of you agreeing as to what official act Ivan Greenhut intended the public official to do in return for the gratuity." Id.

Accordingly, the Court concludes that the instructions provided to the jury satisfied the requirements of McDonnell and did not mislead or confuse, inadequately guide the jury's deliberations, or improperly intrude on the fact finding process. Thus, the Court's instructions were not erroneous.

Furthermore, to the extent that the Court erred in its jury instructions, the Court concludes that such error was harmless because, as described above, a rational trier of fact could have found beyond a reasonable doubt that (1) the purchase of office supplies constitutes a "question" or "matter" that is "pending" before a public official and that a public official made a decision or took an action 'on' that question or matter; and (2) the gifts defendant agreed to give violated the prohibition on giving "anything of value" even if (a) defendant genuinely believed that he did not agree to give "anything of value" because he believed that gifts of $25 were permissible, *and* (b) gifts with an aggregate market value of $20 are exempt from the anti-gratuity statute pursuant to OGE regulations.

The Court therefore **DENIES** defendant's motion for a new trial to the extent that his motion relies on the argument that the Court's jury instructions were improper.

### 2. Exclusion of Evidence

Defendant argues that the Court should grant a new trial because it excluded evidence about the scope of the agreement defendant made with employees that gave gifts. Dkt. 166 at 10. At trial, defendant sought to present evidence about the rules he put in place about permissible limits on gifts and the basis for his rules, the OGE regulations. The Court permitted defendant to elicit testimony about the rules he put in place. Id. at 11. But the Court precluded defendant from presenting evidence about the OGE regulations and precluded a witness from testifying about whether she acted in conformity with the training she received on the limits for gifts and whether she witnessed her colleagues breaking the rules for limits on gifts. Id. Defendant alleges that this evidence goes to the scope of the alleged conspiracy and was probative of the fact that defendant did not enter into an agreement with his staff to provide gifts beyond what he believed the legal limit to be. Id. Defendant avers that this evidence was relevant to the jury, which asked whether he could be guilty of conspiracy if he did not believe what he was doing was illegal. Id. Lastly, defendant contends this evidence is relevant under

the proper construction of "anything of value" because the United States argued in McDonnell that token gifts under $20 did not constitute "anything of value." Id. at 11–12.

In his reply, defendant argues for the first time that the Court should grant a new trial because it failed to instruct the jury on the OGE regulations exempting low-value gifts. Reply at 14–15. Defendant essentially converts his argument about exclusion of evidence to one about jury instructions. Defendant contends that the failure to instruct the jury on the OGE regulations was not harmless because it suggested that defendant's $25 rule was "made up," affecting defendant's credibility and altering the trial's outcome. Id.

The government argues that failure to address defendant's good faith belief in the jury instructions was not improper because the illegal gratuities statute does not have a heightened intent requirement, and, therefore, a good faith defense is not relevant to this case. Opp'n at 36. The government contends that an instruction on the OGE regulations was not required because the government did not argue defendant's guilt on gifts below $20. Id.

The government further argues that, to the extent evidence regarding the OGE regulations was excluded, such exclusion was proper because the good faith defense was not available under the illegal gratuities statute, making the OGE regulations irrelevant. Opp'n at 43. The government further argues that defendant introduced the "very testimony" he now claims is excluded and that defendant's counsel argued at closing that defendant believed that gifts under $20 were permissible. Id. at 43–44. Therefore, according to the government, there was no error. Id. at 44. Even if there was any error, the government avers that the error was harmless because the government did not rely on gifts under $20 and evidence of defendant's participation in a conspiracy to give gifts over $25 was "overwhelming." Id.

The Court agrees with the government that evidence regarding the OGE regulations was properly excluded from trial *and* from the jury instructions because, as described above, such evidence was not relevant to a finding of defendant's guilt under the general intent anti-gratuity statute. In addition, the Court finds that plaintiff in fact submitted evidence tending to show that his belief was not "made up" and that a safe harbor existed under the law. For example, an MDP employee testified that he understood that gifts of $20 were permissible because an auditor told him that gifts "under $20" were "okay" and "not a big deal." Dkt. 152, T. 599:21–600:15. Defendant's counsel later clarified that the auditor was a "GSA auditor." Dkt. 153, T. 697:8–13. In addition, a second MDP employee testified that she told defendant that if he intended to send a gift it had to be "under a certain dollar amount." Dkt. 152, T. 412:5–9. Accordingly, any error in excluding evidence regarding the OGE regulations was harmless.

The Court therefore **DENIES** defendant's motion for a new trial to the extent that his motion relies on (1) the argument that the Court improperly excluded evidence regarding the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**   **'O'**

OGE regulations, or (2) the argument that the Court failed to instruct the jury on the OGE regulations.

## V. CONCLUSION

In accordance with the foregoing:

The Court **DENIES** defendant's motion for acquittal on Counts I and III to the extent that the motion relies on McDonnell's construction of "official act."

The Court further **DENIES** defendant's motion for acquittal on Counts I and III.

The Court **DISMISSES WITHOUT PREJUDICE** Count III and vacates the verdict on that count.

The Court **DENIES** defendant's motion for a new trial.

IT IS SO ORDERED.

|  |  |
|---|---|
| Initials of Deputy Clerk | 00 : 00<br>CMJ |

cc:   U.S. Probation
      Pretrial Services